IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

UNITED STATES OF AMERICA            RESPONDENT

v.        No. 4:13-cr-40023-SOH-BAB-001
          No. 4:15-cv-04020

MARCUS FLOYD            MOVANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is the Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 filed *pro se* by Marcus Floyd (hereinafter referred to as "Floyd"), an inmate confined at the Forrest City Medium Federal Correctional Institution in Forrest City, Arkansas.

The Motion was referred for findings of fact, conclusions of law and recommendations for the disposition of the case. The United States of America (hereinafter referred to as the "Government") has responded to the Motion. ECF No. 65. The Court has considered the entire record, and this matter is ready for decision. For the reasons stated below, the Court recommends the Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (ECF No. 55) be **DENIED**.

**1.**     <u>Background</u>:

On October 30, 2013, Floyd was named in a three (3) count Indictment filed in the United States District Court for the Western District of Arkansas. ECF No. 1. Count 1 alleged "[o]n or about May 2, 2013, in the Western District of Arkansas, Texarkana Division," Floyd "did knowingly distribute a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21 U.S.C. §§ 841(a)(1)." Count 2 alleged "[o]n or about

May 15, 2013, in the Western District of Arkansas, Texarkana Division," Floyd and Michael James Walker "aiding and abetting each other, did knowingly distribute a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2." Count 3 alleged "[o]n or about July 16, 2013, in the Western District of Arkansas, Texarkana Division" Floyd "did knowingly possess with intent to distribute a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21 U.S.C. §§ 841(a)(1)."

On November 15, 2013, Floyd appeared for an arraignment before the Honorable U.S. Magistrate Judge Caroline Craven. ECF No. 6. At this arraignment, Floyd appeared with retained counsel, John Stroud. *Id.* Floyd entered a plea of not guilty to Counts 1-3 of the Indictment. *Id.* Subsequently, the Honorable U.S. District Judge Susan O. Hickey set a jury trial in Floyd's case for December 20, 2013. ECF No. 8. On December 3, 2013, Floyd moved to continue this trial date. ECF No. 9. The next day, Judge Hickey continued Floyd's trial date to March 27, 2014. ECF No. 10.

On March 5, 2014, Floyd appeared with counsel John Stroud for a change of plea hearing and entered a plea of guilty to Count 3 of the Indictment. ECF No. 22. On the same day, Floyd and the Government submitted a Plea Agreement to the Court. ECF No. 23. As a part of this Plea Agreement, Floyd agreed to plead guilty to Count 3 of the Indictment. *Id.* ¶ 1. Floyd also admitted to the following facts: "On July 16, 2013 investigators with the Bi-State Narcotics Task Force and the FBI Task Force met with a confidential informant (CI) who advised that a purchase of two ounces of methamphetamine could be made from Marcus FLOYD, aka 'Fifty,' for $2400. Investigators had previously utilized the CI to conduct controlled purchases of methamphetamine

from FLOYD on May 12 and May 15, 2013." *Id.* ¶ 2.

> Floyd further admitted the following:
>
> The CI made contact with FLOYD via cell phone and ordered two (2) ounces of methamphetamine.  FLOYD instructed the CI to meet at a location in Texarkana, Arkansas to conduct the transaction.  The CI traveled to the agreed location and maintained telephone contact with investigators throughout the operation.  While the CI was waiting at the meeting location, FLOYD called the CI to confirm the transaction was for two (2) ounces of methamphetamine.  Several minutes later, FLOYD arrived at the meeting location driving a silver Chevrolet Avalanche.  Investigators conducting surveillance of the transaction observed FLOYD exit the Chevrolet Avalanche and enter the CI's vehicle.  At that time, investigators approached the CI's vehicle and took FLOYD into custody.  Investigators arresting FLOYD observed FLOYD drop a plastic bag containing suspected methamphetamine on the floorboard where FLOYD was sitting.  FLOYD was taken into custody and searched, and investors located over $6,000 in U.S. currency in FLOYD's pocket.

*Id.* Floyd admitted he was advised of his *Miranda* rights and agreed to provide a statement to the investigators. *Id.* He admitted to bringing the two ounces of methamphetamine to the CI and further admitted to receiving dealer quantities of methamphetamine from his source of supply. *Id.* This evidence was submitted to the Arkansas State Crime Laboratory where it tested positive for 55.6146 grams of 95% pure methamphetamine. *Id.*

Also as a part of this Plea Agreement, Floyd acknowledged he had been advised of the maximum penalties for Count 3 and agreed he faced a maximum term of imprisonment of twenty (20) years, a maximum fine of $1,000,000, both imprisonment and a fine, a term of supervised release to begin after his release from prison, the possibility of going back to prison if he violates the conditions of his supervised release, and a special assessment of $100.00. ECF No. 23 ¶ 11. Floyd also waived his appellate and post-conviction remedies as a part of this Plea Agreement. *Id.* ¶ 7. This included his right to directly appeal and the right to collaterally attack the conviction and sentence pursuant to 28 U.S.C. § 2255 "except for claims based on Ineffective assistance of counsel

which challenge the validity of the guilty plea or this waiver." *Id.*

Floyd also stipulated to an amount of methamphetamine: "The United States and the defendant agree that the most readily provable amount of drugs for which the defendant should be held accountable is at least 50 grams but less than 150 grams of actual methamphetamine." ECF No. 23 ¶ 10. Floyd agreed this amount "equates to a gross base offense level of 32." *Id.* Floyd also stated that if he were found to qualify as a career offender, he "acknowledges his gross base offense level may be adjusted accordingly." *Id.*

Floyd made the following representations in the Plea Agreement: "By signing this plea agreement, the defendant acknowledges that: a. The defendant has read this agreement and carefully reviewed every part of it with defense counsel.  b. The defendant fully understands this plea agreement and is not under the influence of anything that could impede the defendant's ability to fully understand this plea agreement.  c. No promises, agreements, understandings, or conditions have been made or entered into in connection with the decision to plead guilty except those set forth in this plea agreement. d. The defendant is satisfied with the legal services provided by defense counsel in connection with this plea agreement and matters related to it.  e. The defendant has entered into this plea agreement freely, voluntarily, and without reservation and the defendant's desire to enter a plea of guilty is not the result of threats or coercion directed at the defendant or anyone connected with the defendant." ECF No. 23 ¶ 28.

After the change of plea hearing, the U.S. Probation Office prepared a Pre-sentence Investigation Report ("PSR") at Judge Hickey's direction. ECF No. 38. The PSR found Floyd's base offense level to be 32 pursuant to U.S.S.G. § 2D1.1(c)(4). *Id.* ¶ 32. Floyd received a 2 level enhancement pursuant to U.S.S.G. § 3B1.1(c) for his role in the offense and because he "utilized

another person to distribute methamphetamine on his behalf." *Id.* ¶ 35. Floyd received a 2 level reduction for acceptance of responsibility, and the Government also recommended an additional 1 level reduction for acceptance of responsibility. *Id.* ¶¶ 39-40. This resulted in a total offense level of 31. *Id.* ¶ 41. The PSR found Floyd was a career offender and had a criminal history category of VI. *Id.* ¶¶ 57-60. This resulted in a U.S.S.G. range of 188-235 months, a term of supervised release of 3 years to life, a maximum fine of $1,000,000, and a special assessment of $100.00. *Id.* ¶¶ 121-122.

On July 9, 2014, Floyd appeared before Judge Hickey for sentencing. ECF No. 42. At sentencing, Judge Hickey sentenced Floyd to 140 months in the Bureau of Prisons with credit for time served in federal custody, three years of supervised release, and a special assessment of $100.00. *Id.* Judge Hickey also recommended Floyd be a candidate for the Intensive Drug Treatment Program while incarcerated. *Id.* Floyd did not file an appeal.

**2.      Instant Motion**:

On February 17, 2015, Floyd timely filed a *pro se* Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255. ECF No. 55. Counsel was then appointed to represent Floyd. The Court directed a response, and the Government filed its Response on April 27, 2015. ECF No. 65. In this Motion, Floyd raises three arguments:

1. Ineffective assistance of counsel because his counsel failed to file an appeal in his case even though he claims he specifically instructed his counsel to file an appeal;

2. Ineffective assistance of counsel because his counsel failed to object to the "uncounseled" convictions used to increase his criminal history category; and

3. Abuse of discretion by the trial court in increasing his sentence under § 4B1.1 where the Government failed to submit *Shepard* approved documentation.

ECF No. 55. This matter is now ready for decision.

**3.     Discussion**:

Floyd requests relief under 28 U.S.C. § 2255. ECF No. 55. A § 2255 motion is fundamentally different from a direct appeal. "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice." *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996). As noted above, Floyd requests relief based upon his three arguments listed above. The Government has responded to each of these claims. ECF No. 65. Thee Court will address each of these specific issues.

However, as an initial matter and in considering the first two arguments, the Court notes in order to prevail on an ineffective assistance of counsel claim, a movant must show: (1) his "trial counsel's performance was so deficient as to fall below an objective standard of reasonable competence", and (2) "the deficient performance prejudiced [his] defense." *See Toledo v. United States*, 581 F.3d 678, 680 (8th Cir. 2009) (*quoting Nave v. Delo*, 62 F.3d 1024, 1035 (8th Cir.1995)). When considering the first element, there is a "strong presumption that counsel's conduct falls within the wide range of professionally reasonable assistance and sound trial strategy." *Toledo*, 581 F.3d at 680 (*quoting Garrett v. United States*, 78 F.3d 1296, 1301 (8th Cir.1996) (*citing Strickland v. Washington*, 466 U.S. 668, 689 (1984)). "The burden of proving ineffective assistance of counsel rests with the defendant." *United States v. White*, 341 F.3d 673, 678 (8th Cir. 2003)(*citing United States v Cronic*, 466 U.S. 648, 658 (1984)).

Under the first prong of the *Strickland* test, the Court considers counsel's performance objectively and gauges whether it was reasonable "under prevailing professional norms" and

"considering all the circumstances." *Fields v. United States*, 201 F.3d 1025, 1027 (8th Cir. 2000)(citations omitted). The Court should examine counsel's challenged conduct at the time of his representation of the defendant and avoid making judgments based on hindsight. *See id.* There is typically no basis for finding a denial of effective counsel unless a defendant can show specific errors that "undermined the reliability of the finding of guilt. . . ." *White,* 314 F.3d at 678. If, however, "counsel completely fails to subject the prosecution's case to meaningful adversarial testing, there has been a denial of Sixth Amendment rights making the adversary process presumptively unreliable [and no showing of prejudice is required]." *See id.*

If the Court finds deficient counsel and thus must consider the second prong, prejudice, a defendant must establish "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Prejudice can only be found if, "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Maynard v. Lockhart*, 981 F.2d 981, 986 (8th Cir. 1992).

      A.     **Ineffective Assistance: Request for an Appeal**

Floyd claims his counsel was ineffective because he failed to appeal his conviction. ECF No. 55 at 3, 8-10. Floyd claims he specifically directed his counsel file to appeal his conviction. *Id.* Despite this specific request, Floyd claims his counsel failed to file an appeal. *Id.* Floyd claims this was ineffective assistance of counsel. *Id.*

For Floyd's claim to succeed, he must show that he instructed his counsel to file an appeal. *See Holloway v. United States,* 960 F.2d 1348, 1357 (8th Cir. 1992). Further, a bare claim or a "single, self-serving, self-contradicting statement" is insufficient to make that required showing. *Id.*

In this case, for the following reasons, the Court finds Floyd has not supplied sufficient evidence to demonstrate he directed his attorney to file an appeal.

First, his trial counsel's testimony directly contradicts his claim that he directed his trial counsel to appeal his conviction. ECF No. 65-1. In a sworn affidavit, Floyd's trial counsel stated "Mr. Floyd never asked me to file a Notice of Appeal on his behalf. In fact, after sentencing, I received no correspondence whatsoever from Mr. Floyd, and I had no communication of any other type from Mr. Floyd." *Id.*

Second, in the Plea Agreement which Floyd signed, Floyd waived his right to appeal. *See* ECF No. 23. As noted above, under a separate paragraph header entitled "**WAIVER OF APPELLATE AND POST-CONVICTION RIGHTS**," Floyd expressly waived all appellate and post-conviction rights in the Plea Agreement. *Id.* ¶ 7. Such an agreement certainly contradicts his current claim that he requested an appeal be filed.

Third, Floyd's conduct after sentencing does not support his claim that he had any interest in appealing his case. On July 9, 2014 at sentencing in this matter, Floyd was directly advised that he had fourteen days to appeal his conviction. ECF No. 63 at 19-20. Judge Hickey directly admonished him regarding this issue: "Now Mr. Floyd I need to tell you about your appeal rights. In paragraph 7 of your plea agreement, you waived the right to appeal both the conviction and sentence you receive in this case except under certain circumstances. If you do decide you want to appeal, you must do so within 14 days of the entry of the judgement in this case, which will probably be sometime this week, *so you've got 14 days to appeal*." *Id.* (emphasis added). Despite the fact Floyd was specifically advised of his appellate deadline, Floyd has presented no evidence demonstrating he took any action in this case until he filed the current Motion on February 17, 2015.

ECF No. 55. This Motion was filed seven months after his sentencing. *Id.* This fact certainly undercuts his current claim that he requested an appeal be filed.

For these three reasons, the Court finds Floyd, other than his bare assertion, has not supplied sufficient evidence demonstrating he directed his counsel to appeal his conviction. In fact, the record and other evidence before me directly contradicts his claim. Thus, the Court finds no support for his claim that his counsel was deficient for failing to appeal Floyd's conviction.

### B. Ineffective Assistance: "Uncounseled" Convictions

Floyd claims his counsel was ineffective because his counsel failed to object to "uncounseled [not represented by counsel] prior convictions" which were used to increase his criminal history. ECF No. 55. Upon review of this claim, it appears Floyd is challenging the PSR. Included in the PSR was Floyd's criminal history. *Id.* at 8-15. As a part of that criminal history, Floyd was found to have three misdemeanor charges where his attorney representation was found to be "unknown." ECF No. 38 ¶¶ 51 (Disorderly Conduct); 54 (Failure to Identify Fugitive from Justice), and 55 (Contempt). Floyd claims his counsel was ineffective for failing to object to these offenses being included as a part of his criminal history because he was not represented by counsel or was "uncounseled" when he was convicted of these offenses. *Id.*

Upon review, the Court finds this argument is meritless for two reasons. First, in the Plea Agreement that Floyd signed, Floyd specifically waived the right to collaterally attack his conviction pursuant to 28 U.S.C. § 2255 "except for claims based on Ineffective assistance of counsel which *challenges the validity of the guilty plea or this waiver."* ECF No. 23 at 4 (emphasis added). Here, Floyd is challenging the calculation of his criminal history. Floyd is *not* challenging the validity of his guilty plea or the waiver in this action. Thus, Floyd has waived his right to appeal this issue.

Second, based upon a review of the merits of Floyd's claim, the Court finds no basis for relief. Indeed, none of the three "uncounseled" convictions increased his criminal history score. They all reported as "0" on the criminal history score. Thus, the Court cannot find prejudice even if Floyd's trial counsel was ineffective for failing to object to these "uncounseled" convictions. They in no way increased his criminal history score.[1]

### C. Abuse of Discretion: *Shephard* Material

Floyd claims the trial court abused its discretion by increasing his sentence based upon the career offender guidelines. ECF No. 55 at 11-15. Specifically, Floyd claims documentation is required pursuant to *Shepard v. United States,* 544 U.S. 13 (2005) to allow for a career offender enhancement. *Id.* Floyd claims this documentation was not provided. *Id.* Thus, Floyd claims he should not have been sentenced as a career offender. *Id.*

Upon review of this claim, the Court notes again that according to the terms of his Plea Agreement, Floyd has waived this issue. Additionally, Floyd's claim regarding his career offender status is not cognizable with this 2255 Motion. *See Sun Bear v. United States,* 644 F.3d 700, 705 (8th Cir. 2011). Notably, Floyd was sentenced to 140 months. The statutory maximum for Count 3 was twenty years pursuant to 21 U.S.C. § 841(a)(1). Thus, even with a career offender enhancement, Floyd's sentence is still well under the statutory maximum.

Because his sentence is below the statutory maximum even with the career offender

---

[1] There is a fourth conviction where Floyd was not represented by counsel, and this conviction *did* increase his criminal history score by 1. *See* ECF No. 38 ¶ 56. With that conviction, however, Floyd specifically "waived counsel." Thus, because Floyd specifically requested having no counsel, his trial counsel in the present action was not ineffective for failing to object to this conviction because it was "uncounseled." Further, even this were a valid argument, as noted above, Floyd waived his right to raise this issue as a part of a 2255 action.

enhancement, Floyd has no basis for bringing this claim as a part of a 2255 motion. *See Sun Bear v. United States,* 644 F.3d 700, 705 (8th Cir. 2011) (rejecting a 2255 motion based upon an alleged error in the career offender calculation because "Sun Bear's [the defendant's] sentence was well-within the statutory maximum authorized for the offense of second-degree murder . . . [so] any notion that his sentence as a career offender resulted in a miscarriage of justice because it was lacking in rudimentary fairness evaporates"). Thus, the Court also finds Floyd has no basis for relief on this issue.

4. **Evidentiary Hearing**:

Based on the record in this case, I also conclude an evidentiary hearing is not required in this matter. Floyd is clearly not entitled to the relief he seeks.[2] Further, I find Floyd has not made a substantial showing of the denial of a constitutional right, and any request for a certificate of appealability should be denied as well.

5. **Recommendation**:

Accordingly, based on the foregoing, it is recommended the instant motion be **DENIED** and dismissed with prejudice. Pursuant to 28 U.S.C. § 1915(a), I recommend the finding that an appeal from dismissal would not be taken in good faith.

**The Parties have fourteen (14) days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The Parties are**

---

[2] *See Buster v. United States*, 447 F.3d 1130, 1132 (8th Cir.2006) (holding that a § 2255 motion can be dismissed without a hearing if (1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact).

reminded that objections must be both timely and specific to trigger *de novo* review by the district court.

**DATED** this **31st day of July 2015.**

                                              /s/ Barry A. Bryant
                                              HON. BARRY A. BRYANT
                                              U.S. MAGISTRATE JUDGE